Jacobson v. Newton Coal Company, Appellant.

Argued October 2, 1933.

Before KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*Raymond A. White, Jr.,* and with him *Maurice W. Sloan, Jr.,* of *Sloan, White & Sloan,* for appellant.

*Herman P. Abramson,* and with him *Samuel F. Pepper,* for appellee.

OPINION BY CUNNINGHAM, J., February 1, 1934:

Plaintiff has a verdict for $750, awarded as damages for personal injuries received when the one and

one-half ton delivery truck he was driving north on Lincoln Drive, and across its intersection with Emlen Street, was struck by an empty coal truck (owned by defendant and driven by its employe) coming east on Emlen.

Defendant's point for binding instructions was declined and its subsequent motion for judgment n. o. v. dismissed; hence this appeal. As stated by counsel for appellant, the sole inquiry now involved is whether the trial judge, WALSH, J., should have declared plaintiff guilty of contributory negligence as a matter of law.

The general direction of Lincoln Drive, (fifty feet from curb to curb) is north and south and of Emlen Street (about forty feet wide) east and west, but they do not intersect at these widths. The irregularity of the intersection is due to the fact that another north and south street, Ellet, converges with Lincoln Drive at a point approximately sixty-five feet south of Emlen. Moreover, as Emlen approaches (from the west) the space thus created its northern sidewalk curves to the left and continues north along Lincoln Drive and its southern to the right and thence south along Ellet. As a result, the distance from the southeast corner of Lincoln Drive and Emlen (near which the collision occurred and which may be considered a right angle corner) to that portion of the regular cartway of Emlen, which is forty feet wide, is two hundred and thirty feet. Emlen approaches the intersection from the west at a descending grade of more than four per cent. and Lincoln Drive from the south at an ascending grade of two and one half per cent.

The accident occurred about three o'clock in the afternoon. Plaintiff's description follows: "On October 6, 1930, about between three and three-thirty I was driving this International Truck, very heavily loaded on this grade around Lincoln Drive and Emlen Street, and when I was about fifty feet from the

corner of Lincoln Drive and Emlen Street, I blew my horn. There was considerable traffic, it is a busy intersection, as far as Lincoln Drive is concerned, and I noticed at that time the coal truck coming down Emlen Street passing Glen Echo Road, [the first cross street west of Lincoln Drive] that is about three hundred and twenty-five or three hundred and thirty feet and I proceeded from fifteen feet to the corner, looked in both directions ...... There was a considerable amount of traffic going southbound on Lincoln Drive and there was a possibility of them turning into that street, and at that time I went into second gear, on account of the load and I noticed at that time the coal truck was beyond the intersection of Ellet Street [extended]. ...... Well, the man was so far away, and so many ways to go, just like a big wide open space there, and I proceeded forward and when the rear of my truck was just about past the [south] curb line of Emlen Street, I noticed two or three cars coming southbound on Lincoln Drive suddenly coming to a stop and went in front—swung toward the left like and stopped. I also saw this coal truck coming across this intersection at a terrific rate of speed and in a fraction of a second I knew that the accident had to happen, had to hit me, so being only at that time fifteen feet in the intersection I simply swerved to the right and was practically standing still but he kept coming down without slackening speed and struck the truck."

Further testimony of plaintiff was that when he reached the south curb of Emlen defendant's truck "was approximately two hundred and twenty-five or two hundred and thirty feet away;" that he was then in second gear and traveling seven or eight miles per hour; and that the speed of defendant's driver was between forty-five and fifty miles per hour.

Under cross examination he testified: "Q. As I understand the question you were fifteen feet south

of the south side of Emlen Street you saw an automobile truck for the first time? A. That is right. Q. At that time it was about three hundred and twenty-five feet away from you? A. Yes sir, ...... Q. When you reached the curb which was fifteen feet away from that spot ...... the truck was then about two hundred and twenty-five feet away from you? A. That is right. ...... Q. In other words, while you were going fifteen feet this automobile traveled one hundred feet? A. Yes, sir. Q. You could see, therefore, that he was coming at a very fast rate of speed? A. I did not keep my eyes glued to him, I noticed him, he was three hundred feet away and I had looked in each direction and I noticed the truck there, but I did not follow his speed or anything, because he was almost a block away. ...... Q. When you were at the curb the automobile was two hundred and twenty-five feet away from you? A. Yes, sir. Q. Did you stop? A. I did not. ...... Q. How much farther did you go? A. I pulled out these sixteen feet, or whatever it is, and I had already turned about six or seven feet more before I was struck. ...... Q. Then what distance, going up this hill with a heavy load, could you stop? ...... A. At that rate of speed, with a truck like that, would take about six or seven feet to stop the truck. ...... Q. How far out into Emlen Street were you when you started to turn? A. Far enough for the truck to clear the curb, maybe sixteen feet, maybe fifteen feet. ...... Q. You say you were watching this truck coming towards you? A. I didn't say I was watching it. Q. You did not watch it? A. I saw him, noticed him twice, the last time I noticed him he was two hundred and twenty-five feet away. Q. Then you did not see him again until the accident happened? A. I saw him when I was already fifteen feet into the intersection. Q. That is the next time you saw him? A. That is the next time I saw him. Q. From the time you saw

him two hundred and twenty-five feet away, until the accident happened, you did not see him again? A. I did not see him again. Q. When you last saw him, he was coming across the street at a speed, as I understand you to say, about fifty miles an hour? A. I said forty-five or fifty, maybe forty-four or forty-five. ...... Q. Then you did not look again until the accident happened? A. I saw him when he was about one hundred feet away, when I was fifteen feet in the intersection, he was at that time one hundred feet, probably ninety feet away from me at that time. ...... Q. You knew you could stop within six feet, didn't you? A. Yes. Q. You knew that he was coming so fast—A. That he could not turn in any direction. Q. Could not turn in any direction and was bound to run into you? A. Yes, sir. Q. That was— that is when you were back up to the curb line? A. No, sir. Q. Where were you? A. I was already in the intersection when I saw him. Q. How far in the intersection? A. The truck had cleared the curb line turning into Emlen Street. ...... He had to come towards me, he was two hundred and twenty-five feet away—that corner, I tell you is like an open space, could have went anyway two hundred and twenty-five feet away. ...... At that time traffic was very heavy, there were considerable machines passing me on the left going north and there was a constant stream—on Lincoln Drive coming south to me at that time. Q. Did the truck hit any of the other automobiles? A. If they hadn't stopped it would have hit those. Q. They did stop and you were the only one that didn't stop? A. I was in the intersection, they were not, so they had a chance to avoid him. Q. The only reason you did not avoid this accident was because you were in the intersection and would not stop, isn't that it? A. No, the only reason the accident was not avoided was because if the man would have gone to the left, he had enough room to pass me, it would

have been avoided, that is why I turned, because there was enough room to go by me on Emlen Street. Q. Couldn't the accident have been avoided if you had watched the automobile and had stopped within that six-foot distance? A. No, he would have hit me just the same.''

We have quoted at length from plaintiff's testimony because it is the basis for the contention of counsel for defendant that plaintiff should have been declared guilty of contributory negligence as a matter of law.

Plaintiff's version was flatly contradicted by the testimony of the driver of defendant's truck and his helper. They said there were no automobiles or trucks at the intersection when they reached its western side; that they continued across at a speed of twelve miles per hour and when more than halfway over saw plaintiff's truck coming north on Lincoln Drive at a speed "about ten times faster than [they] were going;" and that plaintiff drove his truck into defendant's near the right rear wheel of the latter. About the only fact upon which there was agreement was that plaintiff's truck upset as one of the results of the collision.

The record indicates there were at least two apparently disinterested eye witnesses of the occurrence, but neither side manifested any desire to give the jury the benefit of their testimony with respect to vital facts. They were called by plaintiff to describe the position of the respective trucks after the accident, and, although each stated he had seen the collision, neither was interrogated by counsel for plaintiff concerning its circumstances, nor did counsel for defendant call either of them.

Obviously, each driver minimized his own speed and exaggerated that of the other. The observation of the trial judge to the jury, that the interested witnesses might be giving their impressions as to speed as they were "recorded on their minds at the time the accident happened," or, on the other hand, might be

giving them as "retouched" since the date of the occurrence, was exceedingly mild, particularly in view of what might properly be said about some of the testimony.

Upon the issue of the negligence of defendant's driver, the jury was fully justified in rejecting his testimony and that of his helper, and the question of plaintiff's contributory negligence was fairly and adequately submitted to the jury.

Having been so submitted, and the jury having found in favor of plaintiff, we may not set the verdict aside unless, upon a review of the evidence in the light most favorable to him, we are convinced the only rational conclusion is that he was guilty of contributory negligence.

Having regard to plaintiff's statutory right of way, the unusual character of the intersection, the distance at which plaintiff saw defendant's truck to his left, the traffic conditions which also required attention from plaintiff, and the right of plaintiff to assume that defendant's driver, although traveling fast, would slow down to a reasonable speed and bring his truck under control within the several hundred feet intervening, we cannot say that plaintiff was so clearly guilty of contributory negligence as to make it the duty of the trial judge to say so as a matter of law.

Our conclusion is that the matters to which we have referred justified the refusal of binding instructions and the assignments are accordingly overruled.

Judgment affirmed.